UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEMPER INDEPENDENCE INSURANCE CO., | : : | CIVIL ACTION NO. 3:11-cv-00294(JCH) |
| Plaintiff, | : : | |
| v. | : : | |
| AUSTIN TARZIA, et al., | : | SEPTEMBER 15, 2011 |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS OR STAY (DOC. NO. 18)**

**I.   INTRODUCTION**

On February 24, 2011, plaintiff Kemper Independence Insurance Company ("Kemper") brought this action against Austin Tarzia, Anthony Tarzia, Elizabeth Whitfield, and Malcolm Chalmers. Kemper seeks a declaratory judgment stating that it has no duty to defend and indemnify Austin and Anthony Tarzia in connection with a lawsuit brought by Elizabeth Whitfield, individually and on behalf of her son, Malcolm Chalmers.

Defendants Austin and Anthony Tarzia ("the Tarzias") have moved the court to decline to exercise jurisdiction over this action pursuant to 28 U.S.C. § 2201, or, in the alternative, to stay the action pending resolution of the underlying state court proceeding.  See Mot. to Dismiss or Stay (Doc. No. 18).  For the following reasons, the Motion is denied.

**II.   BACKGROUND**

The underlying state court action arose from an altercation between Austin Tarzia, Malcolm Chalmers, and two other minors in the parking lot of Stamford High School on January 30, 2009.  Compl. Ex. A ¶¶ 14-15.  Austin Tarzia was arrested in

connection with the incident and pled guilty to Assault in the Second Degree.  Compl. ¶ 17.  Almost a year later, Malcolm Chalmers' mother, Elizabeth Whitfield, commenced a civil action ("the Whitfield suit") in Connecticut Superior Court against Austin Tarzia and his father, Anthony Tarzia, inter alia, seeking compensation for expenses incurred by Whitfield and personal injuries suffered by Chalmers as a result of the altercation.  Compl. ¶¶ 7-8.  Whitfield's complaint asserts claims for intentional conduct, recklessness, and negligence against Austin Tarzia, as well as claims for statutory parental liability and negligent supervision against Anthony Tarzia.  Compl. ¶ 8.

Anthony Tarzia has a homeowner's insurance policy issued by Kemper ("the Policy"), under which Austin Tarzia is also insured.  Compl. ¶¶ 18, 20.  The Tarzias claim that the Policy obligates Kemper to defend them in the Whitfield suit and indemnify them for any resulting liability.  Compl. ¶ 19.  Kemper argues that it has no such duties, because the altercation at Stamford High School does not qualify as an "occurrence" under the Policy, Compl. ¶ 23, 28, and because the Policy specifically excludes coverage for injuries caused by intentionally harmful acts, criminal acts, acts of physical abuse, and acts related to the use, sale, manufacture, delivery, transfer or possession of drugs.  Compl. ¶¶ 24-27, 29-32.  The Tarzias assert that none of these exclusions apply to the Whitfield suit, primarily because Austin Tarzia's assault on Malcolm Chalmers was an act of self defense.  See Mem. in Supp. of Def.'s Mot. to Dismiss (Doc. No. 19) at 11 [hereinafter Mem. in Supp.].

### III.   LEGAL STANDARD

The Declaratory Judgment Act ("DJA"), 28 U.S.C § 2201(a), provides that, in "a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or

2

not further relief is or could be sought." The DJA "created an opportunity rather than a duty, to grant a new form of relief," Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995), and afforded district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Id. at 285. To guide the exercise of this discretion, the Second Circuit has approved consideration of the following five factors: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy. Dow Jones & Co, Inc. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir. 2003).

## IV. DISCUSSION

The Tarzias argue that, under Wilton and its Second Circuit progeny, the court should exercise its discretion to dismiss or stay Kemper's claims pending resolution of the Whitfield suit. The facts of this case, however, differ significantly from those in Wilton. There, the underlying state action involved all parties to the federal action and hinged on interpretation of the same insurance policy. Wilton, 515 U.S. at 279-80. The Supreme Court endorsed dismissal "where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court." Wilton, 515 U.S. at 289; see also Konover Const. Corp. v. Royal Indemnity Co., 399 F. Supp. 2d 130, 132 (D. Conn. 2005) (finding a stay appropriate because "the issues in this case and the state case are identical and both lawsuits seek a declaration of rights").

The Wilton decision does not attempt "to delineate the outer boundaries" of a district court's discretion under the DJA, and it does not expressly foreclose courts from declining jurisdiction even in the absence of parallel state proceedings. Wilton, 515 U.S. at 290. Courts of this circuit, however, have repeatedly declined to dismiss DJA actions over insurance liability when the insurer is not party to the underlying state suit. See, e.g., Peerless Ins. Co. v. Disla, 999 F. Supp. 261, 263 (D. Conn. 1998) ("This is not a situation where the insurance coverage issue would better be decided in the state court action; it is not even an issue in that proceeding."); Middlesex Insurance Co. v. Mara, 699 F. Supp. 2d 439, 444 (D. Conn. 2010) ("[T]he issue of coverage under the homeowner's policy may not be properly litigated in the underlying action because [the insurer] is not a named party in that suit."). Application of the Dow Jones factors to Kemper's claims does not provide a compelling reason to deviate from these precedents. Because the issues of Kemper's duty to defend and duty to indemnify raise different concerns under Dow Jones, they are analyzed separately below.

### A. Duty to Defend

Under Dow Jones, a declaratory judgment from this court would undoubtedly "serve a useful purpose in clarifying or settling" Kemper's obligation to defend the Tarzias, and provide both Kemper and the Tarzias with "relief from uncertainty" during the pendency of the Whitfield suit. Dow Jones, 346 F.3d at 359. As it is not a party to the underlying action, Kemper can hardly be accused of "rac[ing] to res judicata" on a claim that will not be addressed by the state court. Id.

The Tarzias focus on the fourth Dow Jones factor, arguing that a decision by this court regarding Kemper's duty to defend would "increase friction between the state and

4

federal legal systems" by addressing a novel issue of state law. Mem. in Supp. at 11. To support this claim, the Tarzias point to Vermont Mutual Ins. Co. v. Walukiewicz, in which the Connecticut Supreme Court held that intentional conduct exclusions in insurance policies do not preclude indemnity when the insured acted in self defense. 290 Conn. 582, 585 (2009). The Tarzias argue that, in the wake of Vermont Mutual, the scope of an insurer's duty to defend in cases involving self defense is unknown. Mem. in Supp. at 11. They further assert that, because Austin Tarzia plans to argue self defense in the Whitfield suit, any determination by this court regarding Kemper's duty to defend the Tarzias would "encroach on the domain of the State of Connecticut." Id.

The Tarzias' argument fails on two fronts. First, given that the complaint in the Whitfield suit includes allegations of negligent and reckless conduct by Austin Tarzia, in addition to allegations of intentional conduct, Compl. ¶¶ 8-9, it is not clear that the determination of Kemper's duty to defend will necessarily turn on the existence of Austin Tarzia's self-defense claim. Second, this court does not find Connecticut law regarding an insurer's duty to defend in cases of self defense to be unsettled. While it is true that the lower court decision under review in Vermont Mutual "was directed only at the question of whether the plaintiff had a duty to indemnify [the defendant]," 290 Conn. 582, 590, the Connecticut Supreme Court made clear that its own ruling had broader implications. Id. ("We emphasize . . . that the principles hereinafter articulated typically will implicate, primarily, an insurer's duty to defend."). The court went on to cite the following passage from Appleman on Insurance: "[I]f intentional actions of self-defense are within coverage, the insurer has a duty to defend the insured whenever the insured claims he or she acted in self-defense and the plaintiff was injured thereby." Id. at 591

(quoting E. Holmes, Appleman on Insurance (2d 2001) § 123.1(b), p. 59). Finally, the court reiterated the established rule that "an insurer's duty to defend is much broader than its duty to indemnify and is triggered by the nature of the claims stated by the parties in their pleadings." Id. at 602 n. 21 (emphasis added) (citing Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins. Co., 274 Conn. 457, 463-464 (2005)). These pronouncements provide clear guidance on the questions of law surrounding Kemper's duty to defend the Tarzias.

As a result, this court declines to exercise its discretion to dismiss Kemper's request for a declaratory judgment regarding its duty to defend. Any party is free to move for partial summary judgment on this issue, as it seems the question can and should be resolved based upon Policy language and state court pleadings.[1] See Middlesex Ins. Co. v. Mara, 699 F. Supp. 2d at 444 (citing U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F. Supp. 2d 348, 353 (E.D.N.Y. 2006)) ("When a determination of the duty to defend can be made and thus clarify the insurer's obligations in [an] underlying tort action, the DJA is properly invoked.").

## B.   Duty to Indemnify

As with its duty to defend, a declaratory judgment regarding Kemper's duty to indemnify the Tarzias for liability in the Whitfield suit would serve a useful purpose in

---

[1] Traditionally, Connecticut courts have looked only to the underlying complaint to determine whether an insurer has a duty to defend. See, e.g., Springdale Donuts, Inc. v. Aetna Cas. and Sur. Co. of Illinois, 247 Conn. 801, 807 (1999) ("[I]t is well settled that an insurer's duty to defend . . . is determined by reference to the allegations contained in the underlying complaint.") (citation and internal quotation marks omitted). The Tarzias argue that Vermont Mutual creates "an area of potential conflict in insurance coverage law," because the existence of a self-defense claim will not be apparent from the complaint alone. Def.'s Reply to Kemper's Objection to Mot. to Dismiss/Stay (Doc. No. 22) at 4. However, the Vermont Mutual court anticipated and addressed this problem. By stating that an insurer's duty to defend is "triggered by the nature of the claims stated by the parties in their pleadings," Vermont Mutual, 290 Conn. 582, 602 n. 21 (emphasis added), it signaled that courts should review both the plaintiff's complaint and the defendant's answer in the underlying action to determine whether the insurer has a duty to defend.

clarifying its obligations.  See Dow Jones, 346 F.3d 357 at 359.  On this issue, however, there is more weight to the Tarzias' accusation that Kemper is "rac[ing] to res judicata." Notwithstanding Kemper's assertion to the contrary, it is possible that the state court's determination as to whether Austin Tarzia acted in self defense would be binding in this matter.  If the finder of fact in the state action determines that Tarzia was not acting in self defense, the Tarzias will be precluded from arguing otherwise at a subsequent trial in this court.  See Aetna Cas. & Sur. Co. v. Jones, 220 Conn. 285, 302 (1991) (allowing a plaintiff insurer in a DJA action to invoke collateral estoppel against a defendant who had "fully and fairly litigated the issue at a prior trial" even though insurer was not party to that trial).  That said, the Tarzias exaggerate when they claim that "the question of insurance coverage is entirely dependent on the [state court's] factual findings as to self-defense and/or defense of another, which have yet to be made in the underlying action."  Mem. in Supp. at 7 (emphasis added).  If the Tarzias prevail on a self-defense claim in state court, Kemper will not be estopped from re-trying the issue in federal court, because it is not party to the Whitfield suit.  See DaCruz v. State Farm Fire and Cas. Co., 268 Conn. 675, 691-92 (holding that an insured could not invoke the doctrine of collateral estoppel against an insurer who was neither party to the prior action nor in privity with the prior opponent).

  The state action, then, has the potential to resolve the issue of Kemper's duty to indemnify, but is not certain to do so.  Under these circumstances, the court does not think a dismissal of Kemper's claim is the appropriate course of action.

  Following a ruling on Kemper's duty to defend, any party is free to move for this case to be administratively closed, with leave to reopen upon final resolution of the

7

Whitfield suit. Like a stay, an administrative closing would ensure that the state court has the first opportunity to evaluate Austin Tarzia's claim of self defense, while also eliminating the risk of a time bar on the federal action if the state case fails to resolve the matter. See Wilton, 515 U.S. at 288 n.2.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss or Stay (Doc. No. 18) is **denied**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 15th day of September, 2011.

                                            /s/ Janet C. Hall
                                            Janet C. Hall
                                            United States District Judge