UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEMPER INDEPENDENCE INSURANCE CO., | : : | CIVIL ACTION NO. 3:11-cv-294 (JCH) |
| Plaintiff, | : : | |
| v. | : : | |
| AUSTIN TARZIA, et al., | : | JUNE 19, 2012 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 34)**

**I.    INTRODUCTION**

On February 24, 2011, plaintiff Kemper Independence Insurance Company ("Kemper") brought this action against Austin Tarzia, Anthony Tarzia, Elizabeth Whitfield, and Malcolm Chalmers.  Kemper seeks a declaratory judgment stating that it has no duty to defend and indemnify Austin and Anthony Tarzia in connection with a lawsuit brought by Elizabeth Whitfield, individually and on behalf of her son, Malcolm Chalmers.

Defendants Austin and Anthony Tarzia ("the Tarzias") now move for summary judgment as to Kemper's duty to defend them in the underlying state court action.  Mot. Summ. J. (Doc. No. 34).  For the following reasons, the Motion is granted.

**II.    BACKGROUND**

A.    Underlying State Court Action

The underlying state court action arose from an altercation between Austin Tarzia, Malcolm Chalmers, and two other minors in the parking lot of Stamford High School on January 30, 2009.  Defs.' Mem. Supp. (Doc. No. 35), Ex. A ("Whitfield Compl.") ¶¶ 14-15.  Austin Tarzia was arrested in connection with the incident and pled

guilty to Assault in the Second Degree as a youthful offender.  Pl.'s Local Rule 56(a)(2) St. (Doc. No. 47), Ex. B ("Austin Tarzia Dep.") at 27, 29.  Malcolm Chalmers' mother, Elizabeth Whitfield, subsequently commenced a civil action ("the Whitfield suit") in Connecticut Superior Court against Austin Tarzia and his father, Anthony Tarzia, inter alia, seeking compensation for expenses incurred by Whitfield and personal injuries suffered by Chalmers as a result of the altercation.  See generally Whitfield Compl.

Whitfield asserted claims for intentional conduct, recklessness, and negligence against Austin Tarzia, as well as claims for statutory parental liability and negligent supervision against Anthony Tarzia.  Id.  More specifically, Whitfield alleged that Chalmers was—either intentionally or recklessly—"thrown to the ground, kicked, punched, stomped upon and/or struck by . . . Austin Tarzia." Id. at 16, 18.  Alternatively, Whitfield alleged that, as a result of Austin Tarzia's negligence and carelessness, Chalmers "was caused to fall to the ground and sustain severe injuries."  Id. at 20.  In response to Whitfield's claims, Austin Tarzia asserted the following special defenses: self-defense, self-defense of others, contributory negligence, and assumption of the risk.  Defs.' Mem. Supp., Ex. B ("Tarzias' Answer") at 5-6.

    B.    Relevant Insurance Policy Provisions

Anthony Tarzia has a homeowner's insurance policy issued by Kemper ("the Policy"), under which Austin Tarzia is also insured.  Compl. (Doc. No. 1) ¶¶ 18, 20; Defs.' Mem. Supp. at 1-2.  The Policy states that Kemper will provide a defense at its expense "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence."  Defs.' Mem. Supp., Ex. C at 15 ("Policy").  The Policy defines "occurrence" as "an accident."  Id. at 1.

The Policy also states that it does not apply to bodily injury or property damage "[w]hich is expected or intended by the insured." Id. at 16.  Finally, it states that it does not apply to bodily injury or property damage "[a]rising out of . . . physical or mental abuse." Id. at 18.

The Tarzias claim that the Policy obligates Kemper to defend them in connection with the Whitfield suit.  Defs.' Mem. Supp. at 3.  Kemper argues that it has no such duty, because (1) the altercation at Stamford High does not constitute an "occurrence" within the meaning of the Policy; (2) the Policy's intentional conduct exclusion applies; and (3) the Policy's physical abuse exclusion applies.  Pl.'s Mem. Opp'n (Doc. No. 44) at 9, 10, 12.

## III.   SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address questions of fact, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  Summary judgment "is properly granted only when no rational finder of fact could find in favor of

the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised, on the basis of the evidence presented, the question must be left to the finder of fact. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

**IV.    DISCUSSION**

   A.    "Occurrence" Limitation & Intentional Conduct Exclusion

As previously noted, coverage under the Policy is available only in the case of an "occurrence," which is defined as "an accident." Policy at 1. The Policy does not define "accident," but Connecticut courts have interpreted the term to encompass "unintended, unexpected, or unplanned event[s]." Middlesex Ins. Co. v. Mara, 699 F. Supp. 2d 439, 449 (D. Conn. 2010); see also Vermont Mut. Ins. Co. v. Walukiecz, 290 Conn. 582, 594 (2009) ("the relevant inquiry in determining whether an accident has occurred is whether the injuries at issue were caused by the intentional design of the insured, or rather, by a sudden, unforeseen event").

In Vermont Mutual Insurance Company v. Walukiecz, the Connecticut Supreme Court held that the word "occurrence," as used in an insurance policy, "encompasses actions taken by an insured in legitimate self-defense." Vermont Mut., 290 Conn. at 596-97; see also id. at 597 ("Because acts of self-defense are unplanned and unintentional, it follows that they are accidental within the meaning of the policy."). The Vermont Mutual court further concluded that an insurance policy's exclusion of coverage for intentional conduct did "not preclude coverage for injuries resulting from

4

legitimate acts of self-defense . . . because those injuries were not expected or intended by the insured." Id. at 599.

Kemper argues that the Vermont Mutual holding was limited to acts of "legitimate" self-defense and that the legitimacy of Austin Tarzia's self-defense claim is a factual question that cannot be resolved on a motion for summary judgment. Pl.'s Mem. Opp'n at 11. The court disagrees in the context of the pending Motion for Summary Judgment. While the legitimacy of Austin Tarzia's self-defense claim would certainly be relevant to a determination of whether Kemper has a duty to indemnify the Tarzias against an unfavorable judgment in the Whitfield suit, it is not relevant to the determination of whether Kemper has a duty to defend the Tarzias in connection with that suit.

As the Vermont Mutual court clearly stated, "an insurer's duty to defend is much broader than its duty to indemnify and is triggered by the nature of the claims stated by the parties in their pleadings." Vermont Mut., 290 Conn. at 602 n.21 (citing Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins. Co., 274 Conn. 457, 463-464 (2005)). The Vermont Mutual court also approvingly quoted the following passage from Appleman on Insurance: "[I]f intentional actions of self-defense are within coverage, the insurer has a duty to defend the insured whenever the insured claims he or she acted in self-defense and the plaintiff was injured thereby." Id. at 591 (quoting E. Holmes, Appleman on Insurance (2d 2001) § 123.1(b), p. 59). Thus, Kemper's duty to defend the Tarzias is properly determined by reference to the language of the pleadings and the Policy, not the factual merits of Austin Tarzia's self-defense claim. See Imperial Casualty and Indem. Co., 246 Conn. 313, 323-23 (1998) (holding that, when an

5

allegation in the complaint "falls even possibly within the coverage described in the policy, the insurance company must defend the insured"); Middlesex Ins. Co., 669 F. Supp. 2d at 444 ("[S]ummary judgment is appropriate to determine whether an insurer owed a duty to defend on the basis of an insurance contract because the construction of the contract presents a question of law for the court.").

Here, Austin Tarzia claimed in his state court answer that he acted in self-defense during the altercation at Stamford High. Because an act of legitimate self-defense would qualify as an "occurrence" under the Policy and would not implicate the Policy's intentional conduct exclusion, Kemper has a duty to defend the Tarzias in connection with the Whitfield suit, unless coverage is barred under some other Policy provision.

C. Physical Abuse Exclusion

Kemper next argues that coverage is barred under the Policy's "physical abuse" exclusion. Pl.'s Mem. Opp'n at 12. It contends that "whether Austin Tarzia was acting in self-defense at the time of the underlying altercation is irrelevant to the physical abuse exclusion." Id. at 13 (internal quotation marks omitted). Again, the court disagrees.

To support its argument, Kemper cites two cases: Merrimack Mutual Fire Insurance Co. v. Ramsey, 117 Conn. App. 769 (2009), and Safeco v. Vescey, Civil No. 08cv833 (JBA), 2010 WL 3925126 (D. Conn. Sept. 30, 2010). In Merrimack, it was undisputed that the defendant in the underlying action had stabbed the plaintiff, with whom he was romantically involved, more than twenty-four times with a kitchen knife. Merrimack, 117 Conn. App. at 770. The victim brought a negligence action, in which

she alleged that the defendant did not intend to cause her bodily injury and that he suffered from a variety of mental and psychiatric disorders that prevented him from understanding the wrongfulness of his conduct. Id. The defendant's insurer sought a declaration that it had no duty to defend him in connection with the suit. Id. at 771. In upholding a grant of summary judgment for the insurer, the Connecticut Appellate Court held that "a consideration of the abuser's intent" is not required when applying an insurance policy's physical abuse exclusion. Id. at 772.

In Safeco, the court found that the physical abuse exclusion applied to an insured who "forcefully" hurled a carrot in the direction of his wife during an argument, thereby causing her "extensive facial and ocular injuries." Safeco, 2010 WL 3925126, at *12. The court cited Merrimack for the proposition that there was no "implicit intent-to-harm requirement" embedded in the physical abuse exclusion. Id. at *9.

Neither Merrimack nor Safeco involved a claim of self-defense. Even if, as these two cases suggest, an insured's intent is generally irrelevant to the application of an insurance policy's physical abuse exclusion, the court does not believe that acts undertaken in self-defense can fairly be considered "physical abuse." In Safeco, after reviewing several dictionary definitions and relevant case law, the court defined abuse as "maltreatment that deviates from a baseline societal understanding of what is appropriate conduct."[1] Id. at *10. Acts of self-defense, by contrast, "enjoy societal approval and are legally sanctioned." Vermont Mut., 290 Conn. at 683. Accordingly, the Policy's "physical abuse" exclusion does not excuse Kemper from its duty to defend the Tarzias in connection with the Whitfield suit.

---

[1] The Merrimack court did not attempt to define abuse; it simply stated that "the stabbing of the [underlying plaintiff] clearly constituted physical abuse within the language of the policy." Merrimack, 117 Conn. App. at 773.

7

D.        Collateral Estoppel

Kemper suggests in a footnote that Austin Tarzia may be estopped from claiming self-defense in the Whitfield suit, because, following the altercation at Stamford High, he "pled guilty to Assault in the Second Degree, a class D felony, which includes an element of intent." Pl.'s Mem. Opp'n at 11 n.6.  To support this contention, Kemper cites Aetna Casualty & Surety Co. v. Jones, in which the Connecticut Supreme Court found that a defendant who had been convicted of manslaughter after a criminal trial could not relitigate the issue of intent in a subsequent civil case. Jones, 220 Conn. 285, 303 (1991).  The court disagrees that Jones supports a finding of estoppel in this case.

Unlike Austin Tarzia, the defendant in Jones had been convicted by a jury, and the Jones court expressly declined to decide "whether a judgment rendered on the basis of a criminal defendant's guilty plea could satisfy the requirement of full and fair litigation for the purposes of collateral estoppel." Id. at 307 n.22.  Further, in the earlier case of Rawling v. City of New Haven, the Connecticut Supreme Court explicitly stated, albeit in dicta, that a guilty plea does not have a preclusive effect. Rawling, 206 Conn. 100, 111 (1988) ("As a general rule, a criminal judgment based on a plea of nolo contendere or a plea of guilty has no preclusive effect in a subsequent civil action, even though under the law of evidence, a plea of guilty may constitute an admission against interest.").  Lower Connecticut courts applying Jones and Rawling have declined to find collateral estoppel resulting from guilty pleas. See, e.g., Aetna Cas. & Sur. Co. v. Gentile, No. CV93 353207, 1994 WL 109867, at *3 (Conn. Super. Mar. 22, 1994) (collecting cases and finding no estoppel on intent issue where defendant's criminal conviction was the result of a plea).

The court also notes that Austin Tarzia pled guilty as a youthful offender. Austin Tarzia Dep. at 29. Under Connecticut law, "a determination that a defendant is a youthful offender is not deemed a conviction." State v. Matos, 240 Conn. 743, 751 (1997) (citing Conn. Gen. Stat. § 54-76k). Thus, even if a conviction by guilty plea could generally support a finding of collateral estoppel, it is not clear that estoppel would be appropriate in the case of a youthful offender plea. Accordingly, the court declines to find that Austin Tarzia will be estopped from claiming self-defense in the Whitfield suit.

## V.  CONCLUSION

Because the claims asserted against the Tarzias in the Whitfield suit potentially fall within the coverage of the Policy, the court finds that Kemper has a duty to defend the Tarzias in connection with that suit and grants the Tarzias' Motion for Summary Judgment (Doc. No. 34). Further, because the question of whether Kemper has a duty to indemnify the Tarzias might be mooted by the resolution of the Whitfield suit, the court will administratively close this case, with leave to reopen upon resolution of the state court action. The administrative closure will take effect in fourteen (14) days, unless a party objects and states good cause why the case should not be administratively closed with the right to reopen.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 19th day of June, 2012.

                                                    /s/ Janet C. Hall
                                                  Janet C. Hall
                                                  United States District Judge